IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KATHERINE D.,[1] | No. 6:20-cv-1920-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

    This matter comes before me on Plaintiff Katherine D.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On January 4, 2018, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging disability beginning May 8, 2017. Tr. 163-68. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 97-109. Plaintiff appeared and testified at a hearing held on November 18, 2019, before Administrative Law Judge (ALJ) B. Hobbs. Tr. 31-63. On January 17, 2020, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 10-30. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 4, 2018, the application date. Tr. 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, diabetes mellitus, chronic kidney disease, post-traumatic stress disorder ("PTSD"), unspecified bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), somatic symptom disorder, personality disorder, and right shoulder pain. Tr. 15. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 416.967(c) except the claimant can never climb ladders, ropes, or scaffolds. She can frequently reach overhead with her right upper extremity and she can tolerate no more than occasional exposure to concentrated airborne irritants. The claimant can apply commonsense understanding to carry out short and simple written or oral instructions, consistent with level 2 reasoning that can be learned in 30 days or less. The claimant can have occasional interactive contact with the public and she can have frequent interactive contact with co-workers or supervisors.

Tr. 20.

2 – OPINION & ORDER

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 24. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as vehicle cleaner, hand packager, and salvage laborer. Tr. 24-25. The ALJ therefore found Plaintiff not disabled. Tr. 25.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises two issues with the ALJ's decision. Plaintiff argues the ALJ erred by (1) erroneously discounting her symptom testimony, and (2) improperly rejecting the medical opinions of Kris Hallenburg, Ph.D., and Robert Basham, Ph.D. I address these issues in turn.

### I. Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that she experiences right shoulder pain and is limited to lifting only ten pounds. Tr. 42. She experiences pain with overhead reaching. Tr. 42. She experiences daily kidney pain, which is aggravated by kneeling, sitting, or walking too much. Tr. 44, 51. She can walk three blocks before experiencing pain. Tr. 44. She can sit for forty-five minutes before needing to walk around to alleviate the pain. Tr. 44. She lies down three or four times a day for twenty-five to thirty minutes at a time for pain relief. Tr. 44-45. She sleeps about four hours each night and experiences fatigue throughout the day, which causes focus and concentration issues. Tr. 45. She is able to focus for only five to ten minutes at a time. Tr. 46. It then takes an hour or two before she can return to the task she was doing. Tr. 46. She relies on reminders from her mother to stay focused. Tr. 46. At the time of the hearing, she was living in her truck. Tr. 46, 54. She sometimes has difficulty getting along with others depending on the

"vibe" she gets from them. Tr. 47. She feels restless at times and has difficulty staying in one spot due to ADHD. Tr. 47-48. She experiences anxiety in public places. Tr. 48. She grocery shops at night to avoid other people. Tr. 48. She showers once every two weeks. Tr. 50. She does not believe she can work because of her anxiety around people and her difficulty concentrating. Tr. 50. She lost custody to all eight of her children. Tr. 52. She was not engaging in mental health treatment because her insurance would not cover it. Tr. 56-57.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 21. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence and her record of conservative treatment, and that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 21.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a

5 – OPINION & ORDER

claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ failed to identify conflicting medical records to discount Plaintiff's subjective symptom testimony about the extent of her physical pain. Conflict with objective medical evidence can be a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff described shoulder pain and back pain associated with her kidney disease that limited her ability to lift, "sit[] too much, or walk[] too far." Tr. 41-43. She elaborated that she can only walk a few blocks and sit for about 45 minutes without experiencing kidney pain. Tr. 44. The ALJ cited several medical records from before the relevant period that showed Plaintiff had normal range of motion, "no strength or sensation deficits," and "no weakness but some tenderness." Tr. 21 (citing appointments from December 2016 & May 2017). By contrast, the evidence the ALJ identified during Plaintiff's alleged disability showed "acute shoulder pain," "limited range of motion," and identified Plaintiff's polycystic kidney disease. Tr. 21. Nothing the ALJ cited from this period in any way undermined Plaintiff's allegations of pain and physical symptoms; if anything, the evidence of acute pain and limited mobility supports Plaintiff's allegations. Tr. 21. The ALJ cited improvements in Plaintiff's hemoglobin levels, but does not connect this fact to Plaintiff's pain allegations, or any of her testimony about physical limitations. Tr. 21. Because the ALJ did not identify any evidence that directly conflicted with Plaintiff's testimony about her physical pain, this was not a clear and convincing reason to discount her testimony on the issue.

The ALJ did identify some objective medical evidence that could undermine Plaintiff's testimony about her mental health symptoms, but failed to do so in a clear and convincing way because he did not consider Plaintiff's somatic symptom disorder. Plaintiff testified that her

mental health problems make it difficult for her to concentrate and to interact well with others. Tr. 46-56. The ALJ contrasted this testimony with otherwise normal or positive results from throughout Plaintiff's mental health care during the relevant period. Tr. 21-22. For example, the ALJ noted that at a January 2018 visit Plaintiff had "appropriate mood, appropriate affect, she was calm, and had normal speech. Her thought process was intact, she had no delusions, she had good judgment and insight." Tr. 21 (citing Tr. 325-460). Likewise, in April 2018, the ALJ noted Plaintiff was not anxious and she had an appropriate affect, mood, and behavior. She had no compulsive behaviors and a sufficient fund of knowledge. Tr. 21 (citing Tr. 286-324). Finally, the ALJ cited a December 2019 visit where Plaintiff demonstrated lively affect, and intact memory and concentration. Tr. 22 (citing Tr. 755-67). These all potentially undermine Plaintiff's symptom testimony, but must be reconciled with the fact that the ALJ identified somatic symptom disorder as a medically determinable impairment (MDI) at step two. Tr. 15. Indeed, there is notable overlap between the symptom testimony the ALJ rejected as unsupported and symptoms associated with somatic symptom disorder. *Compare* Tr. 21-22 (rejecting complaints of fatigue and weakness, brain fog, and pain as unsupported) *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)(6)(a) ("pain ... other abnormalities of sensation… fatigue ... abnormal motor movement [and] pseudoneurological symptoms" among symptoms of somatic symptom disorder). The ALJ did not address Plaintiff's somatic symptom disorder when concluding that Plaintiff's symptom testimony was overstated. *See* Tr. 21-22.

In fact, a lack of objective evidence supporting Plaintiff's claims of pain or symptoms may support rather than undermine a claim of disability where somatic symptom disorder is an MDI. *See, e.g., Scott M. S. v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1043444, at *3 (D. Or. Mar. 4, 2020) ("Thus, although the ALJ is correct that a disparity existed between plaintiff's

7 – OPINION & ORDER

presentation/physical complaints and certain portions of the medical record, that disparity was itself part of plaintiff's medical condition."); *see also John A. v. Saul*, 2019 WL 2616594, at *3 (W.D. Wash. June 26, 2019) (ALJ erred when, "[r]ather than considering limitations associated with a somatic symptom disorder, the ALJ utilized evidence associated with such an impairment as a reason for rejecting plaintiff's testimony."). While the testimony of claimants with somatic symptom disorder or a related impairment need not be accepted uncritically, the ALJ ought to address the possibility that discrepancies in such cases are "evidence of impairment, as opposed to evidence of malingering or exaggeration for secondary gain." *Reyes v. Colvin*, 2016 WL 6651259, at *5 (C.D. Cal. Nov. 9, 2016). Because the ALJ did not discuss somatic symptom disorder in his decision, the Court cannot conclude that he addressed the possibility that the identified discrepancies can be attributed to somatic symptom disorder. Accordingly, the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony about mental health issues as inconsistent with the objective medical evidence either.

### B. Conservative Treatment

The ALJ also found Plaintiff's symptom testimony about her mental health was inconsistent with a history of conservative treatment. Tr. 22. Conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive

treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)

The ALJ erred by rejecting Plaintiff's symptom testimony because her treatment for those symptoms was "conservative." While conservative treatment can be a sufficient reason to discount a Plaintiff's symptom testimony, the ALJ must provide more justification than he did here. The ALJ summarized Plaintiff's treatment as conservative in one sentence, reasoning that "she treated conservatively with therapy." Tr. 22. Because the ALJ did not specify what more aggressive treatment options were appropriate or available, it would be illogical to discredit Plaintiff "for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). The absence of a recommendation to pursue more aggressive treatment is typically a good reason for a plaintiff not to pursue more aggressive treatment. *See Alfredo C. v. Saul*, 2020 WL 836833, at *5 (D. Or. Feb. 20, 2020) ("The ALJ in this case does not cite any statement by a medical professional suggesting that Plaintiff's course of treatment was conservative."). The ALJ points to no recommendations Plaintiff failed to follow. *See* Tr. 22. And the lack of inpatient hospitalization is not evidence of conservative treatment in the context of complex mental health disorders either. *See, e.g., Choat v. Berryhill*, 2018 WL 2048332, at *5 (D. Or. Apr. 30, 2018) (so stating and collecting cases). Given this well-developed body of law, the ALJ's conclusion that Plaintiff's subjective symptom testimony is undermined by a history of conservative treatment is not supported by substantial evidence.

### C. Daily Activities

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 23. Activities of daily living can form the basis for an

9 – OPINION & ORDER

ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). The ALJ found Plaintiff's ability to "perform a wide array of activities despite her impairments" such as driving, shopping, paying bills, crocheting, and sewing undermines her testimony about "severe and debilitating mental" symptoms. Tr. 23.

None of the activities the ALJ listed directly undermines Plaintiff's testimony about her physical or mental health limitations, nor does the ALJ sufficiently connect the dots to explain which activity supposedly undermines which piece of testimony. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ cited Plaintiff's ability to shop, pay bills, crochet and sew, and drive herself around, but does not describe with any specificity what testimony these activities undermine (for example, Plaintiff's alleged inability to sit for longer than 45 minutes). Tr. 23. The ability to crochet or sew does not take away from any of Plaintiff's mental or physical health allegations either. Tr. 23.[2] It is not clear from the ALJ's opinion or Defendant's brief which of these activities transfers to a "work skill,"

---

[2] Defendant raises the impermissible *post hoc* rationalization that Plaintiff's ability to sew or crochet undermined Plaintiff's testimony about problems concentrating. Tr. 45-46. The ALJ did not make this inference. *See* Tr. 23. Because the Court is constrained to review "the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), the Court does not consider this argument.

10 – OPINION & ORDER

or contradicts any piece of Plaintiff's testimony. *See Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) (noting that an ALJ must "identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination"). It was error for the ALJ to rely on this as a basis to discount Plaintiff's subjective symptom testimony because substantial evidence does not support the conclusion that Plaintiff's daily activities undermine her symptom testimony.

## II.     Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3).

11 – OPINION & ORDER

An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

  A. Dr. Kris Hallenburg, Ph.D.

The agency referred Plaintiff to Dr. Hallenburg in November 2019 for a consultative psychological examination. Tr. 760. Dr. Hallenburg reviewed available medical records and conducted a clinical interview and mental status examination. Tr. 760-66. Plaintiff reported experiencing mood swings from depression to anger to crying, which were primarily triggered by flashbacks of past trauma. Tr. 760-61. Her past trauma included sexual abuse by her father and grandfather. Tr. 761. She experienced flashbacks about once a month. Tr. 761. She experienced two or three depressive episodes each month, during which she stayed in bed. Tr. 760. She had difficulty reading and staying on task. Tr. 761. She last attended counseling in 2016; she stopped after eight sessions because her insurance coverage ended. Tr. 761. She had experienced domestic violence as an adult. Tr. 762. She reported a history of short-term jobs, many of which she had been fired from. Tr. 763. Dr. Hallenburg noted that Plaintiff had many stories about

mistreatment by employers and showed little understanding about her contribution to those terminations. Tr. 763. She spent most of her days managing her physical pain. Tr. 764.

Dr. Hallenburg observed that Plaintiff was very talkative and quite dramatic. Tr. 764. Her stream of mental activity was fairly tangential and poorly organized, but usually relevant to topic. Tr. 764. Her speech was expansive, rambling, and lively. Tr. 764. She demonstrated delayed recall, remembering only two out of four words after a ten-minute delay. Tr. 765. She performed one set of seven digits forward and a set of three digits backward. Tr. 765. Her abstract thinking was impaired. Tr. 765. She demonstrated very poor insight. Tr. 765. Dr. Hallenburg noted obvious contradictions in Plaintiff's self-reports, and that she reported expansive, grandiose events in her life that were unlikely to be true with little judgment as to the likelihood of being caught in a lie. Tr. 765-66. He found that Plaintiff had little insight into her mental health symptoms, much less being able to manage them. Tr. 766.

Dr. Hallenburg diagnosed unspecified bipolar and related disorder; somatic symptom disorder with persistent pain, mild; rule-out ADHD; and other specified personality disorder with cluster B traits. Tr. 766. She noted that it was difficult to adequately identify a diagnosis for Plaintiff. Tr. 766. She wrote, "It was helpful to have past psychological evaluations that continually indicated discrepancies in reporting; this assessment followed suit." Tr. 766. She noted that Plaintiff often lost track and contradicted herself in reporting information. Tr. 766. She assessed that Plaintiff's history exemplified traits of consistent irresponsibility, impulsivity, failure to plan ahead, repeated lying, attention seeking, shallow emotions, excessive emotionality, self-dramatization, exaggeration, and dramatic expression of emotions. Tr. 766. She assessed a poor prognosis. Tr. 766. She assessed moderate impairment in the ability to make judgments on simple work-related decisions; understand, remember, and carry out complex

13 – OPINION & ORDER

instructions; and interact appropriately with supervisors. Tr. 757-58. She assessed marked impairment in her ability to make judgments on complex work-related decisions; interact appropriately with the public and coworkers; and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 757-58.

The ALJ found Dr. Hallenburg's opinion unpersuasive. Tr. 22. The ALJ specifically found it was inconsistent with Plaintiff's conservative treatment, and objective medical evidence showing that her concentration and memory were intact. Tr. 22. The ALJ also cited records showing Plaintiff had an appropriate mood, appropriate affect, she was calm, and had normal speech. The ALJ further relied on medical evidence showing her thought process was intact, she had no delusions, she had good judgment and insight, and she was not suicidal. Tr. 22 (citing Tr. 325-460).

Regarding "supportability," the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Hallenburg's conclusions. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ discounted Dr. Hallenburg's opinion by finding it conflicted with chart notes from medical examinations with other medical providers, which Dr. Hallenburg does not cite in his opinion. Tr. 22 (citing Tr. 325-460). The ALJ neglected to address the multitudinous medical records Dr. Hallenburg cited in support of her opinion, as required by § 404.1520c(c)(1). Nor did the ALJ consider the context of these more positive chart notes, which were checkmark responses documented in counseling records—most of which predate the period at issue—and disregarded the narratives of those chart notes, which support and are entirely consistent with Dr. Hallenburg's clinical observations and

14 – OPINION & ORDER

conclusions. *See* Tr. 22 (citing a one-line conclusion in a 39-page clinical note that Plaintiff was "oriented to time, place, person & situation"). Given that these examinations were largely focused on Plaintiff's physical symptoms, and do not come from a psychiatric visit, these medical records do not detract from Dr. Hallenburg's opinions regarding Plaintiff's mental health. *See, e.g.,* Tr. 288 (noting that "We had planned to discuss mood, but more pressing matters of lab results, bowels take precedent [*sic*]"). Because the ALJ failed to consider the supportability factor, discounting Dr. Hallenburg's opinion was error.

      Nor did the ALJ adequately address the consistency factor when discrediting Dr. Hallenburg's opinion. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). At a minimum, this means the ALJ must specifically account for the other relevant medical evidence when addressing the persuasiveness of a medical opinion. *See Kevin R. H. v. Saul*, 2021 WL 4330860, at *4 (D. Or. Sept. 23, 2021). The ALJ cited Plaintiff's chart notes from one internal medicine clinic when discounting Dr. Hallenburg's opinion, but failed to account for the large majority of other, highly relevant "evidence from other medical sources" in the record, such as Plaintiff's other mental health records. *See, e.g.,* Tr. 510. This was error. The Court finds that the ALJ failed to sufficiently address the consistency and supportability factors, and did not rely on substantial evidence when determining that Dr. Hallenburg's opinion was unpersuasive and inconsistent with the record.

      *B. Dr. Robert Basham, Ph.D.*

      Dr. Basham examined Plaintiff twice in two parental comprehensive psychological evaluations for the Department of Human Services ("DHS"), first in October 2015, and then again in October 2016. Tr. 701-11, 506-681. At the first examination, Dr. Basham reviewed

15 – OPINION & ORDER

available medical records and administered a clinical interview, mental status examination, and several psychometric tests, including the Kaufman Brief Intelligence Test—Second Edition ("KBIT-2"), the Minnesota Multiphasic Personality Inventory ("MMPI-2"), and the Personality Inventory ("PAI"). Tr. 521-22. Dr. Basham made findings similar to Dr. Hallenburg in terms of Plaintiff's past trauma, and current symptoms. *See* Tr. 522. The KBIT-2 revealed an IQ composite score of 89. Tr. 527. Validity scales on the MMPI-2 indicated that her profile was valid and mildly defensive with significant denial. Tr. 527. PAI validity scales indicated that Plaintiff's profile was valid and moderately defensive. Tr. 527. Dr. Basham noted that interactions between Plaintiff and DHS demonstrated both denial and a pattern of fabrication and/or embellishing the truth in a self-serving manner. Tr. 528.

At the second exam the following year, Dr. Basham observed similar symptoms. Tr. 511-12. Dr. Basham noted that although Plaintiff had participated in services over the past year, she had not shown progress and continued to demonstrate poor awareness and/or judgment. Tr. 511. Dr. Basham diagnosed PTSD; adjustment disorder with mixed anxiety and depressed mood; and other specified personality disorder with narcissistic and paranoid features. Tr. 518. He assessed that Plaintiff's denial and narcissistic personality traits were a major threat to her parenting. Tr. 518. He opined that mental health therapy could reduce her anxiety symptoms but was unlikely to result in significant gains in her personality problems. Tr. 518. He concluded that her son would be at risk if returned to her care. Tr. 519.

The ALJ disregarded Dr. Basham's 2015 & 2016 opinions as too remote to be relevant to Plaintiff's alleged disability beginning May 18, 2017. The ALJ also "note[d] that these opinions were rendered in the context of child endangerment cases and were not issued with specific

consideration of the rules and regulations applicable to the claimant's instant application for disability." Tr. 23.

The ALJ erred in finding Dr. Basham's opinion unpersuasive because he did not consider the supportability or consistency of his conclusions. Tr. 20. Supportability and consistency are the two most important factors in assessing the persuasiveness of a medical opinion and an ALJ must consider them for every medical opinion in the record. 20 C.F.R. § 404.1520c(b)(2) ("we *will explain* how we considered the supportability and consistency factors for a medical source's medical opinions…") (emphasis added). First, the ALJ erred by disregarding Dr. Basham's opinion as too remote from the relevant period. The Ninth Circuit has held that an ALJ is required to consider all medical opinions in the record and has construed this rule to include opinions that predate the alleged onset date. 20 C.F.R. § 404.1520c(b); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence."); *see also Williams v. Astrue*, 493 Fed. Appx. 866, 868 (9th Cir. 2012) (ALJ erred by silently disregarding medical opinions that predated alleged disability onset date). The ALJ also erred by rejecting Dr. Basham's opinion because he saw Plaintiff "in the context of child endangerment cases." Tr. 23. The context for a visit is relevant to the "purpose of the treating relationship," 20 C.F.R. § 404.1520c(3)(iii), but does not speak to either supportability or consistency of the underlying medical evidence under the § 404.1520c(1-2). The ALJ provided no other analysis of the strength of Dr. Basham's conclusion or its consistency with other medical evidence. The ALJ's summary rejection of Dr. Basham's opinion deprives the court of its ability to conduct a meaningful review, and was error for failure to consider the supportability and consistency factors.

**III.     Remand**

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If all three requisites are met, the court may remand for benefits. *Id.* However, even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021.

Here, the first requisite is met because the ALJ erroneously rejected Plaintiff's symptom testimony and Dr. Hallenburg and Dr. Basham's medical opinions. Further proceedings would be useful for the ALJ to properly consider Plaintiff's testimony in light of her somatic symptom disorder, to consider the supportability and consistency of the medical opinions of Doctors Hallenburg and Basham as required by the regulations, and to reformulate the RFC to incorporate limitations from these two categories of evidence if necessary. Therefore, this case is reversed and remanded for further proceedings so that the ALJ can re-evaluate Plaintiff's testimony, re-evaluate the opinions of Doctors Hallenburg and Basham, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

IT IS SO ORDERED.

DATED: 1/23/2024 .


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

19 – OPINION & ORDER